**Bob KINCHELOE, Appellant,**

v.

**Raymond A. GELDMEIER, Independent Executor of the Estate of Maury Burk, Appellee.**

**No. 1466.**

Court of Civil Appeals of Texas, Tyler.

June 18, 1981.

Gregg Owens, Fenley, Bate, Porter & Owens, Lufkin, for appellant.

Walter Borgfeld, Zeleskey, Cornelius, Rogers, Hallmark & Hicks, Lufkin, for appellee.

McKAY, Justice.

This is a suit brought under the Texas Deceptive Trade Practices Act[1] for breach of an implied warranty of merchantability in the sale of cattle.[2] Defendant seller Maury Burk died prior to trial and suit was continued against his estate.

On November 5, 1973, appellant Bob Kincheloe bought 40 Brahma heifers for $15,-968 from Maury Burk through the Lufkin Livestock Exchange at an auction held at that location. According to appellant's testimony, these heifers were purchased for breeding purposes. After paying the Livestock Exchange for the cattle, appellant transferred the herd to his ranch in Lone Grove, Oklahoma.

Appellant attempted to sell 14 of his recently purchased cattle at an auction in Ardmore, Oklahoma, on November 12, 1973; however, the sale was prohibited because two members of the herd (called "reactors") were determined to have brucellosis, a chronic, contagious and normally incurable disease which localizes in the reproductive organs of female cattle and adversely affects the cow's ability to produce offspring.[3] The infected cattle were sold for slaughter as required by law, and on November 16, 1973, the remaining cattle were quarantined under order of the U.S. Department of Agriculture.

A second set of tests was run on November 21 and 26, 1973, and a total of six reactors were found and sold for slaughter. The cattle were tested again on January 8, 1974, at which time one reactor was found, and on June 26, 1974, another test revealed six more reactors. Appellant testified that at that point, "cleaning up" the herd was a "lost cause" and that it would have been economically and commercially impractical to try to eradicate the disease from the herd.[4] Consequently, appellant elected to sell the balance of the herd for slaughter,

1. Tex.Bus. & Com. Code Ann. §§ 17.41 *et seq.*

2. Tex.Bus. & Com. Code Ann. § 2.316(f) (Vernon Supp. 1980–81) now precludes application of the implied warranty of merchantability to the sale of livestock.

3. Appellant's expert witness, U.S.D.A. Veterinarian Dr. Harold E. Adams, testified that some of the cattle purchased by appellant would have had to have been infected with brucellosis prior to November 5, 1973, because the minimum incubation period for the disease is 21 to 30 days.

4. Dr. Adams, who performed the bulk of the tests on appellant's cattle, also testified that the herd was "heavily infected" with brucellosis and that any further attempts to eliminate the disease from the herd would probably be futile.

and the quarantine was removed from appellant's property on July 3, 1974.

Appellant originally filed suit against Maury Burk and Giles Lowery, owner and operator of the Lufkin Livestock Exchange, for breach of express and implied warranties in the sale of the cattle, but Lowery was eventually dropped from the action. A judgment nil dicit was rendered for Bob Kincheloe on August 29, 1977. Maury Burk was granted a new trial upon his motion, but died prior to trial.

A nonjury trial was held on February 19, 1980, and on May 21, 1980, the trial court granted judgment to appellant for $7,500 in actual damages, attorney's fees of $1,000 and costs of court. Appellant reminded the court that these damages were to be trebled given the court's finding of breach of the implied warranty of merchantability. However, on July 24, 1980, the trial court withdrew its original decision and granted judgment for appellee.

The trial court entered its findings of fact and conclusions of law on October 3, 1980. By such findings of fact and conclusions of law, the trial court determined: (1) that the appellant proved his purchase of forty cattle in Angelina County for the purchase price of $15,968; (2) that the appellee was a merchant under Section 2.316, Tex.Bus. & Com. Code; (3) that at the time of the transaction made the basis of the cause of action, a sale of cattle was covered by the provisions of the Tex.Bus. & Com. Code; (4) that the cattle purchased by appellant were not merchantable nor fit for the purposes for which they were purchased; and (5) that the sale constituted an implied warranty of merchantability under Section 2.314 of the Tex.Bus. & Com. Code. However, the court determined that the implied warranty of merchantability was "excluded or modified by a course of dealing or usage of trade" and that the appellant did not, within a reasonable time after he discovered or should have discovered the

breach of warranty, notify the seller of such breach.

Appellant challenges the judgment of the trial court on appeal, arguing that the evidence was "legally insufficient" or insufficient to support the following findings: (1) that the implied warranty of merchantability was excluded or modified by "course of dealing"; (2) that the implied warranty of merchantability was excluded or modified by "usage of trade"; and (3) that appellant failed to give timely notice to appellee after appellant's discovery of the breach of warranty.

We will consider only appellant's second point of error concerning "usage of trade," as the disposition of that point is determinative of the entire case. It is our conclusion that testimony presented provided a reasonable basis for the trial court's finding that the implied warranty of merchantability was excluded or modified by "usage of trade." [5] The only testimony constituting evidence of a trade usage was that of Giles Lowery, and we quote:

Q  Mr. Lowery, in connection with auction sales generally I'd ask you whether or not it is the custom of the trade that a buyer at an auction sale sees what he gets? What he gets is what he buys or what he buys is what he gets?

A  Well, I'd think that'd be correct. That's the only way I'd know to put it.

Q  All right, sir. In the thirteen years that you've been in the auction business, again other than Mr. Kincheloe, have you ever had any complaints from any buyers that he received diseased cattle?

A  No. That's—When you buy one it just belongs to you. There not nobody—I hadn't had any complaints. You can't look at one and tell what's

---

**5.** Section 1.205(b) of the Tex.Bus. & Com. Code defines "usage of trade" as

Any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts.

—is anything matter with him or not. You just go to a sale, they (sic) buyer will buy what they want and the higher bidder gets him. That's the only way its operates.

Q All right, sir. And is it your testimony that that's generally accepted among buyers in this area?

A I'll say it's accepted a hundred percent.

Although appellee has produced little evidence to prove a usage of trade, we cannot say that such evidence is legally or factually insufficient. Our interpretation of Lowery's statements is that a buyer at a cattle auction buys livestock "as is" and simply risks buying an animal that is not in good health, and that such a practice is fully accepted by buyers in the area. As the owner of a livestock exchange in Lufkin for 13 years, Giles Lowery was qualified to testify as to the existence of this trade usage.

Accordingly, we affirm the trial court's judgment denying recovery to appellant.